## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
– Northern Division –

| | | |
|---|---|---|
| TIMOTHY E. AYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. WDQ 02-CV-0061 |
| | ) | |
| CHARLES T. CAPUTE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT CHARLES T. CAPUTE'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Charles T. Capute ("Capute"), by and through his undersigned counsel, hereby opposes Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

Plaintiff's Motion appears to be a preemptive response to Defendant's Motion for Summary Judgment. In Defendant's Motion, Mr. Capute argued that the scope of his representation of Mr. Ayers was limited by consent, that plaintiff had failed to adduce any evidence establishing that Mr. Capute deviated from the applicable standard of care of a reasonable lawyer operating under these limited circumstances, and that the record facts did not establish that any of plaintiff's alleged damages were causally related to any act or omission properly attributable to Mr. Capute.[1] Based on the theory that the best defense is a good offense, plaintiff has asked the Court to find, as a matter of law, that plaintiff did <u>not</u> consent to any limitation on the scope of Mr. Capute's representation.

---

[1] Defendant's Motion raises a number of additional arguments, including limitations. The Motion demonstrates that Mr. Capute is entitled to summary judgment without regard to the disposition of plaintiff's Motion. For the Court's and the parties' convenience, Defendant has not refiled with this Opposition the same materials that were previously attached as exhibits to Defendant's Memorandum in support of his Motion for Summary Judgment. Instead, Defendant will refer to those portions of the exhibits previously filed in this case using the same numbering system (Exhibits 1-33).

He further argues that because Mr. Capute was the last of Mr. Ayers' lawyers to review and make revisions to the Agreement, he must be held liable, as matter of law, for alleged defects in the Agreement – even those provisions of the Agreement which the undisputed evidence establishes were drafted not by Mr. Capute but by Mr. Ayers' Delaware domestic counsel at the time, T. Henley Graves.

What is perhaps most remarkable about Plaintiff's argument is that it purports to be based on Plaintiff's own Affidavit (Exhibit B to Plaintiff's Motion), in which Mr. Ayers finally acknowledges that he has been making up the facts as he goes along, shamelessly if not desperately manipulating and changing his story to perpetuate his unfounded lawsuit against a lawyer who spent approximately 1 ½ hours, more than a decade ago, reviewing and making very minor changes to an antenuptial agreement that Mr. Ayers hired another lawyer to prepare.  Worse yet, plaintiff apparently is not done changing his story.  In his most recent version of the events that occurred over a decade ago, Mr. Ayers claims, for the first time in this case, that he recalls telling Mr. Capute that he wanted him to include in the Antenuptial Agreement a provision waiving his prospective wife's right to alimony.  It is not exactly clear how this new "evidence" supports, if at all, plaintiff's request for summary judgment.  Indeed, the reference is buried in the last paragraph (¶ 31) of plaintiff's six-page Affidavit, briefly mentioned only once in his Motion, and not mentioned at all in his Memorandum in support of his motion for summary judgment.  What is clear, however, is that portions of the Affidavit cannot be reconciled with plaintiff's prior testimony in this case.  Based upon a long line of precedent in this Court and the Court of Appeals, it should be disregarded.  *See Barwick* v. *Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)("A genuine issue of material fact is not

created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

As demonstrated below, Plaintiff's Motion should be denied for essentially two reasons. First, plaintiff still has failed to identify any facts to refute Mr. Capute's testimony, which establishes that he reasonably believed the scope of his representation was limited and that plaintiff had consented to the limitation. Plaintiff conveniently ignores Mr. Capute's undisputed deposition testimony, and argues instead that any attempt by Mr. Capute to limit the scope of his representation of the plaintiff was ultimately unsuccessful because Mr. Capute never "explained any aspects of the Antenuptial Agreement to Plaintiff." Pl. Mem. at 10. Plaintiff has not cited any cases or identified any admissible facts to support his contention that the limitation on the scope of Mr. Capute's representation was invalid because Mr. Capute failed to explain the agreement to plaintiff. The undisputed facts of record establish that Mr. Capute is entitled to judgment as a matter of law.

Second, even if the Court were to conclude as a matter of law that defendant did not adequately limit the scope of his representation of plaintiff, this finding would not justify "striking" defendant's Fourth, Twelfth and Fourteenth Affirmative defenses, as plaintiff requests in his Motion. These and other defenses that Mr. Capute has raised in his Answer are wholly inappropriate for disposition through summary judgment based upon the record in this case. If the Court does not grant defendants' motion for summary judgment, these defenses should be preserved for trial.

**ARGUMENT**

**A.  Plaintiff Is Not Entitled To Summary Judgment On The Question Whether The Scope of Defendant's Representation Was Properly Limited.**

The scope of Mr. Capute's representation of the plaintiff must be viewed in light of all the facts and circumstances that existed at the time plaintiff consulted with him in late August and early September 1991.  Plaintiff's Motion fails to appreciate, or conveniently ignores, most of the pertinent evidence relating to this issue.

Plaintiff now admits that he has little, if any, accurate recollection of the events that occurred over a decade ago.  *See* Pl. Motion, Ex. B, Ayers Affidavit at ¶¶ 18-19.  With respect to the events surrounding Judge Graves' preparation of the Antenuptial Agreement in 1989, plaintiff suggests that the Court should "credit[] the memory of Judge Graves as better than [his own] memory regarding [the] consultation with Judge Graves in March of 1989," *id*. at ¶¶ 10, and accept Judge Graves' testimony where it differs from his own.  *Id*. at ¶ 13.  Remarkably, plaintiff now claims to have a recollection of discussions with Mr. Capute two years later, which he could not recall in his deposition taken in this case just three months ago.

The undisputed record facts establish that plaintiff did not engage Mr. Capute to draft the substantive provisions of the Antenuptial Agreement.  Plaintiff's Delaware counsel, T. Henley Graves of the Delaware law firm of Fuqua and Graves, drafted the substantive provisions that plaintiff now claims were insufficient to protect his assets in the event of a divorce.  *See* Memorandum In Support of Defendant's Motion for Summary Judgment, at 12-14.  It is undisputed that Judge Graves prepared an antenuptial agreement in 1989 based upon discussions he had with Mr. Ayers about what he wanted (and did not want) to accomplish at the time, as well as Judge

4

Graves' professional opinion, based upon years of experience drafting and litigating such agreements before he ascended to the Bench, regarding how best to accomplish those goals. Mr. Ayers now concedes that the agreement that he engaged Judge Graves to prepare was designed to accomplish Mr. Ayers' essential objective at that time – to protect his two businesses, Sussex Printing and Tea Tyme Antiques. Moreover, he has no basis to dispute Judge Graves' testimony that they specifically discussed alimony in 1989 and agreed not to include a waiver of alimony provision in the agreement, because (a) Mr. Ayers was willing to pay Lisa alimony if the marriage ended (it was the goose, not the golden egg, that Mr. Ayers wanted to protect), and (b) inserting such a provision in the Antenuptial Agreement would have increased the risk that Lisa could later attack and render the Agreement unenforceable).[2] Def. Mem., Ex. 7 (Graves Dep.) at 30-34, 38-39.

Mr. Ayers not only concedes that the Agreement Judge Graves drafted for him in 1989 was consistent with plaintiff's wishes at the time, but he also seems to suggest that the form and substance of that Agreement met acceptable standards of care for a lawyer under the facts and circumstances that existed when plaintiff consulted with Judge Graves in 1989. *See* Pl. Motion at 10, ¶ 65 ("Defendant has no evidence that any lawyer from Fuqua and Graves committed any act of negligence.") Having now conceded that he did not want to preclude Lisa from seeking alimony in 1989, and that Judge Graves' failure to include an express waiver of alimony in the agreement was not malpractice, but good lawyering, plaintiff must now offer some credible facts to support his allegation that Mr. Capute's failure to add such a provision two years later somehow fell below the

_____

[2]Plaintiff previously testified in his deposition that Judge Graves only prepared a "form" antenuptial agreement (after having sued his former law firm in Delaware alleging that Judge Graves or perhaps his partner, James Yori, prepared the entire agreement). He also testified that he had no substantive discussions with the Judge regarding the Agreement, but was nevertheless clear that the agreement prepared by Judge Graves would allow his prospective wife (Lisa Ayers) to receive "absolutely ... no alimony whatsoever." *See* Def. Mem., Ex. 1 (T. Ayers Dep.), at 65-66 (emphasis added).

5

acceptable standard of care.  Plaintiff does not and cannot provide any such admissible facts.  The

best plaintiff can do is contradict his prior deposition testimony through a self-serving affidavit that

he produced in support of his Motion.

### 1.  Mr. Ayers' Inconsistent Affidavit Testimony Is Inadmissible.

In his deposition taken on February 6, 2003, plaintiff denied that he had a recollection

of the only discussion he ever had with Mr. Capute in late August or early September 1991 regarding

the Antenuptial Agreement:

> Q. Can you recall as you sit here today the substance
> of any discussions that you had with Mr. Capute some
> more [sic] than a decade ago as it relates to the subject
> of the antenuptial agreement?
>
> A. You mean what I wanted as far as?
>
> Q. No.  The actual words that you said to him, the
> words he said to you, the substance of your
> discussions as it relates to that topic.
>
> A. Okay.  I told him at that particular time, as I recall,
> that I had thought of marrying Lisa and I wanted a
> prenuptial that is as tight as it can possibly be.  I felt
> as though with him knowing, in my mind him
> knowing and being involved in a family and
> everything else with the family trusts and the stocks,
> which he did all the stock work for the corporation,
> everything, he issued stock, he transferred the stock,
> I wanted him to take care of making sure that
> everything was as tight as it could be in a prenuptial.
> I mean there's no question about that's what I wanted.
>
> ****
> Q.  Can you remember anything else about the
> substance of your discussions with Mr. Capute as it
> relates to, at this meeting at your home as it relates to
> the prenuptial agreement?
>
> A.  No, I cannot.

6

Ex. 1 (T. Ayers Dep.) at 78-79, 81. In his Affidavit plaintiff now claims that he "*specifically* advised Defendant that the goals that Plaintiff wanted to reach with respect to the Agreement was that in the event of divorce he did not want Lisa to have any claim on the business and/or personal assets Plaintiff had before the marriage and any increase in the value of those assets. Deponent [presumably Mr. Ayers] also *specifically advised Mr. Capute that he did not want to pay Lisa alimony*." Ayers Aff. (Ex. B) ¶ 31 (emphasis added).[3]

It is a settled principle of law that a party to litigation cannot create an issue of fact, and thereby avoid (or obtain) summary judgment, merely by submitting an affidavit that contradicts the party's prior sworn deposition testimony. *Barwick v. Celotex Corp.,* 736 F.2d 946, 959 (4th Cir. 1984); *see also S.P.* v. *City of Takoma Park*, 134 F.3d 260, 273 n.12 (4th Cir. 1998); *Duvall* v. *Bristol-Myers Squibb Co.*, 103 F.3d 324, 331 (4th Cir. 1996); *Rohrbough* v. *Wyeth Labs*., 916 F.2d 970, 975 (4th Cir. 1990); *Loney* v. *Miles*, 2000 WL 530319, at *3 (4th Cir. 2000) (disregarding deposition that repudiated earlier affidavits); *Rose* v. *Home Depot U.S.A.*, 186 F. Supp. 2d 595, 619 (D. Md. 2002); *Parker* v. *Davis*, 900 F. Supp. 788, 793 (D. Md. 1995). The same rule applies where, as here, a party who has testified at deposition that he does not recall important details later files an affidavit supplying those details. *See King v. Virginia Employment Commission,* 33 F.3d 51, 1994 WL 416439 (4th Cir. 1994) (unpublished opinion).

In *King,* the plaintiff brought an age discrimination claim against her employer. *Id.* at *3. The plaintiff offered as proof of her claim various statements made by her regional director

---

[3]In his Motion plaintiff suggests that defendant cannot refute plaintiff's statement that he told Mr. Capute to include a waiver of alimony provision. *See* Pl. Motion, at 9 (¶¶ 58-59). The short answer is that Mr. Capute does not need to refute plaintiff's self-serving and inadmissible affidavit testimony. In any event, contrary to plaintiff's suggestion that Mr. Capute testified that he "could not recall whether he and plaintiff discussed the issue of alimony," *id.* at ¶ 59, it was clear from the context of the questions and Mr. Capute's answers that Mr. Capute did not believe Mr. Ayers had ever raised the matter of alimony during their discussion. *See* Ex. 13 (Capute Dep.) at 61, lines 2-6.

7

regarding older employees. *Id*. These statements were first offered in the plaintiff's affidavit that was attached to her opposition to defendant's motion for summary judgment. *Id*. The defendants argued that the plaintiff was attempting to create an issue of material fact by contradicting her earlier deposition testimony in which she stated that she did not recall any such statements made by her regional director. *Id*.

       In disregarding the statements in plaintiff's affidavit and affirming the district court's granting of defendant's motion for summary judgment, the Court of Appeals for the Fourth Circuit rejected plaintiff's argument that her statements did not fall within the holding of *Barwick*. *Id*. The plaintiff argued that she had "left the door open" by stating in her deposition that she could not recall any statements made by the regional director. *Id*. The Court held that the statements in the affidavit were insufficient to establish a genuine issue of material fact, and that to allow a plaintiff to "reserve the right to file a later affidavit in response to defendants' summary judgment motion, which affidavit is not subject to cross-examination, would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id*. at *4 (citing *Barwick,* 736 F.2d at 960) (internal quotations omitted).

       The Court of Appeals also has applied *Barwick* in other cases involving a plaintiff's inability to recall factual details relevant to his cause of action. *See Breedlove v. Norfolk & Western Ry., Co.,* 28 F.3d 1208, 1994 WL 326046 (4th Cir. 1994) (unpublished opinion). In *Breedlove,* the plaintiff brought a claim under 42 U.S.C. § 51, claiming that he had injured his elbow at work. *Id*. at *1. However, the plaintiff testified at his deposition that he could not recall the factual circumstances under which he had sustained his injury. *Id*. at *4. Rather than submit an affidavit that contradicted his deposition testimony, the plaintiff in *Breedlove* argued that his deposition

8

testimony could be inferred to mean that he bumped his elbow on the bottom of a truck. *Id.* The Court of Appeals stated that the plaintiff's argument was "tantamount to a request for a determination of 'which of the two conflicting versions of [his] testimony is correct.'" *Id.* (quoting *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984)). The Court of Appeals in *Breedlove* affirmed the district court's grant of summary judgment in favor of the defendant, holding that genuine issues of material fact cannot be created "[u]nder such circumstances." *Breedlove,* 1994 WL 326046 at *4.

At his deposition in this case plaintiff was unable to recall the substance of his discussions with Mr. Capute in 1991 regarding alimony or any other matter. He now allegedly has a *specific* recollection that he told Mr. Capute that he wanted him to include a waiver of alimony provision in the agreement. The Court should not attempt to determine which of the two conflicting versions of Mr. Ayers' testimony should be credited – his deposition testimony demonstrating that, quite understandably, he had no memory of a conversation with Mr. Capute that occurred 12 years ago, or his incredible affidavit testimony just three months later claiming that he now specifically recalls the details of the same conversation. As in *King* and *Breedlove,* the Court should not permit plaintiff to manufacture new facts through testimony that clearly contradicts his earlier sworn deposition testimony. Accordingly, the Court should disregard paragraph 31 of plaintiff's Affidavit and any other contradictory statements offered therein. Because there is no admissible evidence to support plaintiff's claim that the inclusion of a waiver of alimony provision was within the scope of Mr. Capute's representation – and, indeed, all credible evidence suggests that he did not want such a provision included in the Agreement for the reasons explained by Judge Graves in his

uncontradicted deposition testimony – defendant is entitled to summary judgment on this aspect of plaintiff's claim.

**2.  The Scope Of Mr. Capute's Representation Of Plaintiff Was Limited.**

Without Mr. Ayers' inadmissible affidavit testimony, there is no evidence to dispute Mr. Capute's testimony regarding the circumstances under which he agreed to review the Antenuptial Agreement prepared by Judge Graves in 1989 (and later revised by Ms. Ayers' own lawyer, Richard Berl).  As Mr. Capute explained in his deposition, he did not agree to provide domestic relations advice to Mr. Ayers or to advise him on the legal effect or validity of the substantive provisions of the Agreement; that was what Mr. Ayers hired Judge Graves to do in 1989. Rather, Mr. Capute's sole function was limited to reviewing the Agreement to ensure that the stock interests held by the Ayers family in Sussex Printing would be protected in the event Mr. and Mrs. Ayers later divorced. Def. Mem., Ex. 13 (Capute Dep.) at 39-40.  As Mr. Capute put it, "I told Tim I was, A, not a Delaware lawyer and, B, not a domestic lawyer." *Id*. at 92*,* 95.  Mr. Ayers responded that he "had a domestic lawyer [the law firm of Fuqua and Graves]," *id*. at 93, and Mr. Capute believed that Mr. Ayers would have the Antenuptial Agreement reviewed by his domestic lawyers in Delaware (the Fuqua & Yori firm) before he executed it.  *Id*. at 40, 93-94. Mr. Capute's testimony is not the only evidence that suggests that the scope of his representation of plaintiff was narrow. Consistent with Mr. Capute's testimony, the executed version of the Antenuptial Agreement contains Mr. Ayers' acknowledgment that he had only one counsel representing him in connection with the "preparation of [the] agreement" – the law firm of "Fuqua, Yori & Rogers."  Def. Mem., Ex.15, ¶ 9.

In his Memorandum plaintiff concedes that Mr. Capute could limit the scope of his representation under Rule 1.2(c) of the Rules of Professional Conduct, so long as Mr. Ayers agreed to the limitation "after a full disclosure of the circumstances and consultation." Pl. Mem. at 8. But plaintiff then argues that the Court should conclude as a matter of law that the disclosure in this case was inadequate because Mr. Capute testified that "he never explained any aspects of the Antenuptial Agreement to Plaintiff but instead simply put the document into the mail with a letter that said call if you have any questions." *Id*. at 10. This statement ignores Mr. Capute's testimony regarding what he told Mr. Ayers when they first discussed the Antenuptial Agreement in late August 1991, as outlined above. But more importantly, it confuses disclosure of the *circumstances of the limitation on the representation*, which is what Rule 1.2 requires, with a disclosure of the "aspects of the Antenuptial Agreement" itself. The former has nothing to do with the latter.[4] Mr. Capute clearly told Mr. Ayers that he was not admitted to practice in Delaware (the agreement as prepared by Judge Graves was governed by Delaware law), he had no expertise in the area of Delaware family law, and he could not provide him legal advice or guidance on the domestic relations aspect of the agreement that Mr. Ayers' Delaware counsel, Judge Graves, had prepared. Def. Mem., Ex. 13 (Capute Dep.) at 95. He only agreed to review the agreement within the limited framework of his estate planning expertise, based upon his knowledge of estate planning services that he had performed for the Ayers family in the past. *Id*. at 90-92. Plaintiff has not disputed and cannot dispute this testimony.

As support for his argument that the scope of his representation was not limited, plaintiff cites two sentences from Mr. Capute's letter of September 9, 1991, transmitting his

---

[4]Mr. Ayers looked to the Fuqua firm for disclosures about the substance of the Agreement itself. *See* Def. Mem., Ex. 15, ¶ 9 (in which Mr. Ayers acknowledged that the Fuqua firm had fully explained his "rights and the property described in this Agreement" and the "legal effect of the Agreement," and that he "underst[ood] the terms, provisions, and legal effect of this Agreement" as a result of disclosures made by his counsel, the Fuqua firm).

revisions to the Antenuptial Agreement: "Please let me know if you have any questions about any aspect of this Agreement. I will also be happy to consult Lisa's attorneys as you wish." Pl. Mem. at 7 & Ex. H. Based on this language, plaintiff asserts that he was "justified in assuming" that Mr. Capute was the "final scrivener of the Agreement."[5] Assuming plaintiff meant to suggest that Mr. Capute was the "final author" of the document, no such reasonable inference can be drawn from the letter. On the contrary, Mr. Capute's letter is fully supportive of his deposition testimony and other evidence demonstrating that his role revising the Agreement was minimal.

Plaintiff's argument ignores the first four lines of Mr. Capute's letter. As Mr. Capute mentions in his letter to plaintiff, and as a comparison of the three Antenuptial Agreements demonstrates, *see* Def. Mem. at 16-17 & Ex. 18 (redline comparison of the Fuqua Agreement, Mr. Berl's revised Agreement, and the executed Agreement), Mr. Capute's revisions were limited to changes to "the definition of 'the Estate' ... and the inclusion of inheritance from family members other than parents to the property shielded from spousal election claims. This protects you if Sydney predeceases you." Pl. Mem., Ex. H. Consistent with his testimony that the scope of his representation of plaintiff was limited to reviewing the agreement from an estate planning perspective, Mr. Capute only performed changes of an estate planning nature. *See* Def. Mem. at 17-18.

Plaintiff also suggests that Mr. Capute's offer to discuss his minor estate planning changes with Lisa Wheatley Ayers' attorneys (but not Mr. Ayers' Delaware counsel, the Fuqua firm) contradicts Mr. Capute's testimony that he agreed to review the agreement for purposes of

---

[5]The word "scrivener" is a synonym for the word "scribe." A scribe was a person responsible for transcribing, editing, or interpreting the Bible. *See* Random House Dictionary of the English Language 2d Ed. pp. 1722-23. In modern legal parlance, a scrivener is a person who takes notes or records events, as opposed to a person who creates written works from original thought.

addressing any necessary changes of an estate planning nature only. Pl. Mem. at 8. He does not say why this is the case. Mr. Capute's offer to talk to Ms. Ayers' counsel had no effect on the earlier understanding that Mr. Capute and Mr. Ayers reached when plaintiff first requested that Mr. Capute review the Agreement.

Based upon the undisputed record facts, it is clear that the scope of Mr. Capute's representation of Mr. Ayers was necessarily limited by his disclosed lack of expertise on matters of Delaware domestic relations law, his lack of admission to the Delaware Bar, and his understandable reluctance to assume responsibility for the legal sufficiency of work product of Mr. Ayers' domestic counsel in Delaware. From all the relevant facts and circumstances, it is clear that plaintiff was relying on the Fuqua firm, not Mr. Capute, for advice and counsel on the essential purpose, meaning, and effect of the Agreement. These limitations on the scope of Mr. Capute's representation were disclosed to Mr. Ayers before Mr. Capute agreed to review the agreement, and the record is undisputed that plaintiff understood and consented to the limitation. For these reasons, plaintiff is not entitled to summary judgment on the question whether Mr. Capute properly limited the scope of his representation of Mr. Ayers. The undisputed facts establish that Mr. Capute's representation of plaintiff was limited and that defendant met the applicable standard of care for a lawyer operating under these circumstances.

**B.  Mr. Capute Did Not Engage In The Unauthorized Practice Of Law**.

Plaintiff's final (and perhaps weakest) argument is that this Court should bar Mr. Capute from asserting any affirmative defense in this matter because "Mr. Capute [has] engaged in the unauthorized practice of law." Pl. Mem. at 10. In support of this argument, plaintiff cites a

single, unreported decision from the Superior Court of Delaware, *Burns v. Ferro,* 1991 WL 53834 (Del. Super.). Plaintiff's reliance on *Burns* is absurd.

   *Burns* involved a breach of contract action by investors in an airplane pyramid scheme. Plaintiffs sued the alleged promoters of the scheme for monies allegedly due to them as investors. The evidence established and the Court found that plaintiffs were aware of and participated in the illegal pyramid scheme. *Burns,* 1991 WL at *2. The Court in *Burns* denied their claims based on the settled principle of contract law that "a court will not aid a contractual claim founded on a violation of the law." *Id.* Because the plaintiffs had participated in the fraudulent scheme, they could not sue and recover monies derived from the same transaction.

   Mr. Capute has not broken any laws, and there is no merit to plaintiff's contention, raised for the first time in his Motion for Summary Judgment, that defendant has engaged in the unauthorized practice of law. Plaintiff falsely asserts, without any reference to the record, that Mr. Capute repeatedly traveled to the State of Delaware to prepare documents for Delaware residents. Pl. Mem. at 10. In fact, Mr. Capute's work on the Antenuptial Agreement – all 1.6 hours of it – was performed in his office in Maryland, not in Delaware.[6] *See* Def. Mem., Ex. 13 (Capute Dep.) at 13.

   Moreover, nothing prohibits a federal estate planning lawyer from performing estate planning services for clients in states other than where the lawyer is admitted to practice. Although Mr. Capute did not engage in the practice of law in Delaware, as plaintiff seems to imply, he also fails to cite any rule in effect in 1991 to support his contention that Mr. Capute's representation of

---

[6]Plaintiff states that Mr. Ayers billed plaintiff "$30.00 for spending 20 minutes to 'Study/Review Antenuptial Agreement,' ... $165.00 for spending 70 minutes to 'Draft Antenuptial Agreement,'" and "$45.00 for spending 30 minutes to prepare 'Letter to client re antenuptial changes, proofread agreement.'" *See* Pl. Motion at ¶¶ 40-42. *See also* Pl. Mem. at 4 & Ex. G. Although a minor point, two-tenths of an hour is only 12 minutes, not 20; 1.1 hours is 66 minutes, not 70; and three-tenths of an hour is 18 minutes, not 30.

Mr. Ayers constituted the practice of law in any state other than Maryland. However, the ABA's current Model Rule on the unauthorized practice of law clearly permits a lawyer in one jurisdiction to perform on a temporary basis services for clients in another, provided the services:

> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;
>
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;
>
> (3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires *pro hac vice* admission; or
>
> (4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

ABA Model Rule 5.5 (c).[7]

Neither the ethical rules on the unauthorized practice of law nor any other case or fact cited by plaintiff in his brief warrants his request that the Court strike his affirmative defenses. Mr. Capute's affirmative defenses are necessary only if the Court does not grant him summary judgment. As defendant has established, there are any number of reasons why the Court should enter summary

---

[7] The Supreme Court of Delaware has announced its decision to adopt the ABA Model Rule 5.5 on July 1, 2003. *See* Memorandum from Chief Justice E. Norman Veasey dated April 29, 2003, found at the Court's web site: http://courts.state.de.us/supreme/.

judgment in his favor, some of which are wholly independent of the scope of representation issue raised by plaintiff's Motion. In the event the Court denies defendant's Motion for Summary Judgment, Mr. Capute should be permitted to present his defenses at trial.

## CONCLUSION

For the reasons stated herein, and for the additional reasons stated in Defendant's Memorandum in Support of his Motion for Summary Judgment filed on June 3, 2003, Plaintiff's Motion for Summary Judgment should be denied.

## REQUEST FOR HEARING

Pursuant to Local Rule 105.6, defendant Charles T. Capute respectfully requests a hearing on Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

MURPHY & SHAFFER LLC


By:/s/ *Robert T. Shaffer, III*
Robert T. Shaffer, III

36 S. Charles St., Suite 1400
Baltimore, Maryland 21201
(410) 783-7000
(410) 783-8823 (fax)

*Attorneys for Defendant*